IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| KENNETH TOPP, | : | CASE NO. 6:22-cv-00814-ADA-CM |
| | : | |
| Plaintiff, | : | JUDGE ALAN D. ALBRIGHT |
| | : | |
| v. | : | MAGISTRATE JUDGE: |
| | : | JEFFREY C. MANSKE |
| THE LITIGATION PRACTICE GROUP, PC, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Now comes Defendant, The Litigation Practice Group ("LPG"), by and through its undersigned counsel, and hereby moves this court under Federal Civil Rule 12(b)(6) for an Order dismissing Plaintiff's First Amended Complaint for failure to state a claim upon which relief may be granted. The grounds for this Motion are set forth in the accompanying Memorandum in Support.

Respectfully submitted,

**LUPER NEIDENTHAL & LOGAN**
A Legal Professional Association

*/s/ Kyle T. Anderson*

Kyle T. Anderson (OH B#: 0097806)
1160 Dublin Road, Suite 400
Columbus, Ohio 43215-1052
(614) 221-7663 Fax: (866) 345-4948
Email: kanderson@LNLattorneys.com
*Attorney for Defendant, The Litigation Practice Group PC*

*and*

1

Keith C. Thompson (24013631)
THE LAW OFFICE OF KEITH C. THOMPSON, P.C.
11003 Quaker Ave.
Lubbock, Texas 79424
Phone: (806) 783-8322
Fax: (806) 783-8357
Email: kct@kctlaw.us
*Attorney for Defendant, The Litigation Practice Group PC*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Plaintiff does not fix the deficiencies in his First Amended Complaint that were outlined in LPG's first Motion to Dismiss. (Doc. No. 9). LPG assists its clients in developing "creditworthy" behavior by attempting to resolve its clients' debts. Multiple courts have held that providing such services falls outside the Credit Repair Organizations Act ("CROA"), 15 USC § 1679 *et seq*.

As alleged by Plaintiff, LPG is a law firm, engaged in the practice of law, set up as a professional corporation. In his First Amended Complaint, Plaintiff fails to address this and simply repeats that LPG is a "credit repair organization" but then provides examples of services that have been outside the scope of what is considered a "credit repair organization." Plaintiff has failed to plead facts that are necessary to state a claim for relief, and thus his First Amended Complaint should be dismissed with prejudice.

**II.    PLAINTIFF'S PRIMARY ALLEGATIONS**

LPG is a law corporation, organized under the laws of California as a professional corporation. (Doc. 10, First Amended Complaint ("FAC") at ¶5). Plaintiff alleges that LPG is a "credit repair organization" and a "debt settlement provider." (*Id*.).

Plaintiff claims that LPG "advised that its services included disputing inaccurate information" on Plaintiff's credit report and that LPG would assist in reaching negotiated settlements. (FAC at ¶10). Plaintiff alleges that it would make "monthly payments" to LPG to pay LPG's fees for its services and to pay creditors whose claims could be settled. (FAC at ¶13).

Plaintiff states that LPG is a "credit repair organization" and simply recites the definition contained within 15 U.S.C. §1679a(3). (FAC at ¶26). Plaintiff then makes several general

allegations that LPG is in violation of various provisions of CROA, notwithstanding that Plaintiff cancelled LPG's services after only one month. (FAC at ¶¶29, 31, 33, 35, 37).

Plaintiff further alleges that LPG is a "credit services organization" and a "provider of debt management service" under Texas law. (FAC at ¶¶41,50). Finally, Plaintiff generally alleges that LPG is in violation of Texas law, relying on his general allegations arising under CROA. (Compl. at ¶¶52, 54, 56, 57, 59, 61).

### III. LAW AND ARGUMENT

#### Plaintiff Fails to State Plausible Claims Under Federal Civil Rule 12(b)(6)

##### 1. Legal Standard

To survive a motion to dismiss pursuant to Federal Civil Rule 12(b)(6), a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). Thus, when legal conclusions are involved in the complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), and "only a complaint that states a plausible claim for relief survives a motion to dismiss," *Id.* at 679.

Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss. *Jordan v. Ironworkers Local 263*, N.D.Tex. Civil Action No. 4:21-cv-00715-O-BP, 2022 U.S. Dist. LEXIS 9181, at *4 (Jan. 3, 2022), citing *Ashcroft v. Iqbal*.

If the defects in a plaintiff's complaint are incurable, the complaint should be dismissed with prejudice, without permitting plaintiff leave to amend. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002).

4

**2.     Defendant is not a "Credit Repair Organizations" Under the Credit Repair Organizations Act because it Does Not Provide the Requisite Services.**

The Credit Repair Organizations Act ("CROA") was enacted to protect the public from unfair or deceptive business practices by credit repair organizations. *Henry v. Westchester Foreign Autos, Inc.*, 522 F. Supp. 2d 610, 613 (SD NY 2007). Liability under CROA is limited to credit repair organizations as defined in §1679a(3) and persons in connection with the activities of or transactions involving credit repair organizations. *Wright v. 21st Mortg. Corp. (In re Wright)*, 2007 Bankr. LEXIS 1757, *40-41 (Bankr. ND Ala. 2207).

A credit repair organization:

> (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
> (i) improving any consumer's credit record, credit history, or credit rating; or
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. 1679a(3).

Courts have held that credit repair organizations are only entities whose primary focus is on the improvement or repair of a consumer's credit record and not those who focus is developing creditworthy behavior or resolving debts. *Plattner v. Edge Solutions, Inc.*, 422 F. Supp. 2d 969 (ND Ill. 2006); *Walston v. Nationwide Credit, Inc*., 2019 U.S. Dist. LEXIS 147865 (ND Ill. August 30, 2019) (stating that "the definition of credit repair organization encompasses 'entities whose focus is on the improvement or repair of a consumer's credit record, credit history or credit rating, explicitly or implicitly, not entities whose activities are aimed at assisting consumers in developing "creditworthy behavior" and paying their debts, which may result in improved actual credit as a collateral consequence, rather than as a program objective."); *White v. Fin. Credit Corp*., 2001

U.S. Dist. LEXIS 21486 (ND Ill. December 20, 2001)(finding a company that represented paying debts would improve credit history was not a credit repair organization because its primary business focus was debt collection).

In *Plattner*, a company who offered a "Post Closing Credit Restoration Program" (in addition to various debt payment and validation services), which allegedly falls directly into the purview of being considered a "credit repair organization," was not a credit repair organization. *Id*. at 976.  The court found that Congress did not intend CROA to apply broadly to entities providing advice related to debt and debt repayment, which may result in improved credit as a collateral consequence. *Id*. at 975.  Rather, Congress' focus in enacting the statute was on entities whose focus is the improvement or repair of a consumer's credit record, credit history, or credit rating. *Id*.

If the "Post Closing Credit Restoration Program" was the only service offered by the company in *Plattner*, it may have rendered the defendant a "credit repair organization," however, when viewed in context with the company's primary debt management services, the purpose was to assist in managing a consumer's debt. *Id*. at 976.  Summary judgment was granted in favor of the company. *Id*. at 976-977; See also *Wright v. 21st Mortg. Corp. (In re Wright)*, 2007 Bankr. LEXIS 1757 (Bankr. ND Ala. 2207)(holding the same); *Hillis v. Equifax Consumer Servs*., 237 F.R.D. 491 (ND GA 2006) (denying plaintiff's motion for summary judgment on the fact that defendant was a credit repair organization where defendant advertised that it could help improve an individual's credit outlook and credit score because such statements could be found to mean that defendant would only provide the individual with information so that the individual could take steps to improve their credit score on their own).

The same analysis applies to the situation at bar. Plaintiff attempts to cure his deficient First Amended Complaint by providing a formulaic recitation of the elements contained within the definition of a "credit repair organization." Plaintiff alleges that LPG "represented its services as being for the explicit and implicit purpose of improving his credit score, history, and/or rating." (FAC at ¶11). This, however, does not on its face support a finding that LPG is a "credit repair organization."

The services LPG offered to Plaintiff are similar to the services the company offered in *Plattner*. Plaintiff alleges that LPG "disput[es] inaccurate information . . . on Plaintiff's credit reports," and "assist[s] Plaintiff in reaching negotiated settlements with his various creditors in order to resolve the obligations for less than the balance being sought by creditors." (FAC at ¶10). Of course, LPG's negotiating debt is the same as the company in *Plattner's* "debt management services." As in *Plattner*, this is LPG's primary focus.

Similarly, the fact that LPG may dispute inaccurate information (more akin to "creditworthy behavior," i.e., getting into the practice of regularly checking one's credit report to dispute inaccurate information) is only ancillary to its primary debt management, debt validation, and debt relief services. The court in *Plattner* too found a similar program to be outside the CROA because the ancillary program was viewed within the context of debt management services, the purpose is to develop "creditworthy behavior" and to manage debt, as it is here.

While debt management, debt validation, and debt relief services, may actually improve one's credit, CROA was not intended to encompass any entity that does so. *Plattner v. Edge Solutions, Inc.*, 422 F. Supp. 2d 969, 975 (ND Ill. 2006). Liability under CROA is limited to "credit repair organizations" and, because "credit repair organizations" do not include entities that

7

offer debt management, debt validation, and debt relief services, as LPG does, Plaintiff has not sufficiently alleged a claim upon which relief can be granted.

Accordingly, because LPG does not fit within the statutory definition of "credit repair organizations," Plaintiff can prove no set of facts that would entitle Plaintiff to recover on his allegations that LPG violated the Credit Repair Organizations Act.

The same can be said in reference to Plaintiff's state law claims, in which Plaintiff generally alleges, without more, that LPG is a "credit services organization" and a "provider" of "debt management service."

Consequently, Plaintiff's First Amended Complaint should be dismissed with prejudice, as Plaintiff fails to allege claims for relief above the speculative level.[1]

## IV.   CONCLUSION

For the aforementioned reasons, this Court should dismiss Plaintiff's Complaint, with prejudice, for failure to state a claim.

**LUPER NEIDENTHAL & LOGAN**
A Legal Professional Association

*/s/ Kyle T. Anderson*

Kyle T. Anderson (OH B#: 0097806)
1160 Dublin Road, Suite 400
Columbus, Ohio 43215-1052
(614) 221-7663 Fax: (866) 345-4948
Email: kanderson@LNLattorneys.com
*Attorneys for Defendant, The Litigation Practice Group PC*

***and***

---

[1] LPG's Motion for Extension of Time to File Answer re Amended Complaint (Doc. No. 12) is still pending and the date of this filing is on which LPG requested an extension to move or plead.

Keith C. Thompson (24013631)
THE LAW OFFICE OF KEITH C.
THOMPSON, P.C.
11003 Quaker Ave.
Lubbock, Texas 79424
Phone: (806) 783-8322
Fax: (806) 783-8357
Email: kct@kctlaw.us
*Attorney for Defendant, The Litigation Practice Group PC*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that the foregoing has been filed via the Court's electronic filing system on this 6th day of December 2022. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the Court's electronic filing system.

                                          */s/ Kyle T. Anderson*
                                          Kyle T. Anderson (OH B#: 0097806)